# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DZ BANK AG DEUTSCHE ZENTRAL )
GENOSSENSCHAFTSBANK, )
                              )
            Plaintiff,        )
                              )
v.                            )     No. 10-2126-CM/JPO
                              )
ALL GENERAL LINES INSURANCE,  )
LLC, et al.,                  )
                              )
            Defendants.       )
                              )

## MEMORANDUM AND ORDER

Plaintiff DZ Bank AG Deutsche Zentral Genossenschaftsbank ("DZ Bank"), as agent for Autobahn Funding Company LLC ("Autobahn"), filed this action against a number of defendants, seeking declaratory judgment and judgment in satisfaction of various loans upon which defendants have allegedly defaulted. Before the court is Plaintiff DZ Bank's Motion to Strike Defendants' Affirmative Defenses 1–8 and 11–12 as Barred by the Doctrine of Claim Preclusion or, in the Alternative, for Partial Judgment on the Pleadings (Doc. 55). Plaintiff asserts that defendants' affirmative defenses are precluded by this court's orders in *Aldridge v. Aleritas Capital Corporation*, No. 09-02178-CM ("*Aldridge*"), and that it is entitled to dismissal of or judgment on these defenses. For the reasons that follow, the court denies the motion.

**I.      Factual and Procedural Background**

The remaining defendants are nineteen individuals and businesses who purchased insurance agencies from—and financed them through—subsidiaries of the Brooke Corporation, which is comprised of a group of related companies that operated an insurance agency franchise business (collectively, "Brooke" entities). A detailed factual and procedural history appears in this court's

August 12, 2009 Memorandum and Order and October 1, 2009 Memorandum and Order in *Aldridge*. Although it need not be repeated here, that background concerns how the instant defendants entered into various Agreements for Advancement of Loan (hereafter, "Loan Agreements") with Aleritas—formerly Brooke Credit, a Brooke entity—related to the purchase of their agencies. Each defendant, in entering the Loan Agreement, executed a security agreement granting Brooke a security interest in all of each defendant's personal assets, including all non-real property assets associated with the operation of the insurance business purchased by each defendant from Brooke. In connection with their Loan Agreement, each defendant also executed a promissory note in favor of Brooke. Brooke pledged defendants' loans as collateral to plaintiff DZ Bank pursuant to an agreement under which DZ Bank had loaned Brooke over $25,000,000. When Brooke defaulted under the agreement with DZ Bank, DZ Bank accepted the defendants' loans as partial satisfaction of Brooke's debt.

### A. *Aldridge*

The defendants in this case brought suit as plaintiffs in *Aldridge* against Aleritas, claiming that the loans were fraudulent and should be invalidated. In a second amended complaint, they named DZ Bank and other banks as defendants, adding a tortious interference with contract claim against the defendant banks (based on the banks allegedly contacting insurance carriers and demanding commissions be sent directly to them rather than to plaintiffs) and asserting that the banks were liable for Aleritas's tortious acts as assignees of the loans, or on an agency/vicarious liability theory.

On the *Aldridge* defendants' collective motion, the court dismissed plaintiffs' claim of negligent misrepresentation pursuant to Fed R. Civ. P. 12(b)(6), finding that it was supported only

by conclusory allegations of misrepresentations. The court also rejected plaintiffs' allegations of vicarious liability claims against the banks, reasoning that (1) the banks' status as assignees could not, alone, render them affirmatively liable for claims asserted against Aleritas; (2) the loans were assignable in whole or in part by Aleritas without plaintiffs' consent, and plaintiffs did not allege that the banks assumed Aleritas' obligations or liabilities; and (3) plaintiffs failed to plead any facts whatsoever suggesting an agency relationship between Aleritas and any of the bank defendants. The court concluded that plaintiffs' failure to state a plausible claim on a theory of agency or vicarious liability precluded them from asserting their fraud, RICO, and negligent misrepresentation claims against the bank defendants. The court also dismissed plaintiffs' tortious interference claim against the banks because the complaint failed to allege the existence, let alone the breach, of any contract; the facts alleged did not suggest that the banks acted maliciously or without justification in seeking to collect on plaintiffs' loans; and, aside from conclusory allegations, there was no allegation of damage.

Having dismissed the claims of negligent misrepresentation, vicarious liability and tortious interference with contract for failure to "state a claim to relief that is plausible on its face," *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007), the court dismissed the banks as parties. The court found however, that although the civil RICO and common law fraud claims failed to meet the particularity requirements of Rule 9(b), plaintiffs would be granted leave to amend them. *See Aldridge*, No. 09-02178-CM, Doc. 74, at 12–15; Doc. 80 at 3–4.

In an effort to define the scope of the case following its order, the court noted that:

Whether or not Aleritas commited fraud or violated RICO is the issue in this case. Resolution of the instant case centers on the transactions between Aleritas and plaintiffs.
   Plaintiffs are correct that it is the banks' burden to establish that they are holders in due course. But not in this action. In an enforcement action by the bank

-3-

> against them, plaintiffs may assert any affirmative defenses to which they are entitled, including the affirmative defense that the loans were induced by fraud and the banks are not holders in due course. To the extent the resolution of such an action depends on a finding of fraud in this case, those actions might be stayed. But the issues and evidence in those cases would be different than the issues and evidence in this case, centering on the transactions between Aleritas and bank, rather than between Aleritas and plaintiffs.

(Doc. 80, at 12.)

Despite plaintiffs' effort, the civil RICO claims against Aleritas were also later dismissed pursuant to Rule 12(b)(6). *See id.*; Doc. 98. Plaintiffs' common-law fraud claims were dismissed without prejudice because court declined to exercise supplemental jurisdiction over them. *Id*. In an order filed the same day as the order dismissing the remaining claims, and thus the action, the court reaffirmed that the language above

> was intended to relay to the parties what the court believed to be the proper scope of this litigation. The court's discussion did not create any rights or forecast the resolution of any arguments that might be made in other actions (*i.e.*, for plaintiffs to assert affirmative defenses, or to be precluded from asserting them.) And the court's language was not intended to prospectively resolve or forecast the resolution of any issues that may arise in any other case.

(Doc. 97, at 4.)

### B. *DZ's Current Enforcement Action*

Plaintiff DZ Bank has filed this enforcement action alleging that the defendants are in default, and seeking to accelerate and collect on the loans. (Doc. 6.) Plaintiff asserts that the principal and interest amounts owed separately by these defendants, if added together, exceed $6,200,000.

Plaintiff's amended complaint also asserts that nine of the defendants signed an acknowledgment of debt, in which they identified the loan number and outstanding principal balance of defendant's Brooke-originated loan and stated:

> We hereby confirm our obligation to repay the Loan, together with all interest, fees
> and other amounts specified in the documents and agreements relating to the Loan
> (collectively, the "Loan Documents"), in accordance with the terms thereof, without
> condition or deduction for any counterclaim, defense, recoupment or setoff.

(Doc. 6, at 9–10.)

### C. Affirmative Defenses

The majority of remaining defendants filed an amended answer that raises thirteen affirmative defenses in nearly fifty pages. (Doc. 30, at 25–73.) Two defendants answered separately, and raised fifteen affirmative defenses. (Doc. 31.) These defenses are substantively identical, and therefore the court's order is keyed to the amended answer of the majority defendants. Highly summarized, the challenged defenses are set out here:

1. Defendants were fraudulently induced by Brooke to enter the Loan/Franchise Agreements;

2. There was a prior material breach of the Loan/Franchise Agreements by Brooke;

3. Brooke failed to provide consideration for the Loan/Franchise Agreements;

4. Enforcement would be unconscionable;

5. Brooke has unclean hands, and plaintiff as assignee cannot enforce specific performance of the loans because of Brooke's inequitable conduct;

6. Plaintiff committed prior material breach of the Loan Agreements by seizing money/withholding commissions;

7. Plaintiff is not a holder in due course;

8. Plaintiff has unclean hands;

11. Plaintiff fraudulently induced four defendants to sign an acknowledgment;

12. Nine defendants signed the acknowledgment under duress; and

13. Defendants are entitled to a set-off of all or a significant portion of the balance of the loans. (Doc. 30, at 62–73; Doc. 31, at 44–50.)

**D. Plaintiff's Motion**

Plaintiff's motion seeks to strike the above-listed defenses. Plaintiff argues that (1) a motion to strike is evaluated under the materially same legal standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim; and (2) claim preclusion applies here to bar the challenged affirmative defenses.

**II. Standards and Discussion**

Plaintiff asserts that a motion to strike an affirmative defense is evaluated under the Fed. R. Civ. P. 12(b)(6) failure to state a claim legal standard. The court disagrees. *See Falley v. Friends Univ.*, __ F. Supp. 2d __, No. 10-1423-CM, 2011 WL 1429956, at *3 (D. Kan. Apr. 14, 2011).

Pursuant to Fed. R. Civ. P. 12(f), the court has discretion to strike an "insufficient defense" from a pleading. Fed. R. Civ. P. 12(f); *Resolution Trust Corp. v. Thomas*, No. 92–2084–GTV, 1995 WL 261641, at *1 (D. Kan. Apr. 25, 1995). But unlike the heightened "plausibility" standard now required to survive a 12(b)(6) motion, a defense is insufficient only if no circumstances exist under which it can succeed as a matter of law. *Wilhelm v. TLC Lawn Care, Inc.*, No. 07–2465–KHV, 2008 WL 474265, at *2 (D. Kan. Feb. 19, 2008); *Resolution Trust Corp. v. Tri–State Realty Investors of K.C., Inc.*, 838 F. Supp. 1448, 1450 (D. Kan. 1993). And motions to strike are disfavored. *Smith v. Boeing Co.*, No. 05–1073–WEB, 2009 WL 2486338, at *3 (D. Kan. Aug. 13, 2009); *Fed. Deposit Ins. Co. v. Niver*, 685 F. Supp. 766, 768 (D. Kan. 1987). In deciding a motion to strike, the court bears in mind the purpose of pleading an affirmative defense: to provide the plaintiff with fair notice. *See Siuda v. Robertson Transformer Co.*, No. 90–2245–L, 1992 WL 79311, at *3 (D. Kan. Mar. 16, 1992) (citing *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979)) ("The key to pleading

an affirmative defense is to give the plaintiff fair notice of the defense."). The court may strike an "insufficient defense." But striking an affirmative defense is considered a "drastic remedy," *Wilhelm*, 2008 WL 474265, at *2 (citation omitted), and the court only uses this tool where the challenged allegations cannot succeed under any circumstances, *Resolution Trust Corp.*, 838 F. Supp. at 1450, or where the material "has no possible relation to the controversy and may prejudice the opposing party," *Wilhelm*, 2008 WL 474265, at *2 (citations omitted); *see Falley*, 2011 WL 1429956, at *3.

The doctrine of res judicata is based on the principle that final earlier judgments must be advanced and adhered to by subsequent courts. *Augustine v. Adams*, 88 F. Supp. 2d 1166, 1170 (D. Kan. 2000). Under res judicata, or claim preclusion, a final judgment on the merits precludes the parties or their privies from relitigating any claims that were or could have been raised in that action. *See Allen v. McCurry*, 449 U.S. 90, 94 (1980). For the doctrine to apply, the following three conditions must be satisfied: (1) the prior action must have resulted in a final judgment on the merits; (2) identical parties or parties in privity must be involved; and (3) the cases must be based on the same cause of action. *See Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999) (citation omitted). Courts also apply a fourth requirement or exception: In the prior lawsuit, the plaintiff must have had a full and fair opportunity to litigate the claim(s). *See Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997) (treating full and fair opportunity as a requirement); *Yapp*, 186 F.3d at 1226 (treating full and fair opportunity as an exception). Claim preclusion is a question of law.

**III.    Discussion**

Assuming the court can evaluate the preclusive effect of the *Aldridge* case on defendants' affirmative defenses, the court does not find that the doctrine would apply to bar the defenses.

-7-

First, although identical parties are involved and the *Aldridge* case reached a final adjudication on some claims, it did not reach a final adjudication on the merits for claims of common-law fraud. And it is fraud that forms the basis of several of the affirmative defenses. The other challenged defenses do not track with any specific claims adjudicated in *Aldridge*. And none of the defenses raise negligent misrepresentation, civil RICO, or tortious interference, as pleaded and adjudicated in *Aldridge*. Second, although the parties are identical, they do not meet the third hurdle: this is an enforcement action by a bank against borrowers. *Aldridge* involved negligence claims and claims arising under the federal racketeering statute. Although the matters in this case and in *Aldridge* arise from the same pattern of facts and concern some of the same loans, they focus on different parties and different questions of law. There are different interests at stake, and the claims are different. This court will not bar facially sufficient affirmative defenses that were not adjudicated on their merits in any previous identical suit with identical parties. In this action, plaintiff bears the burden of establishing defendants' liability as to each of its claims, and that it is entitled to the relief it seeks. And defendants may raise any affirmative defenses they have to these claims. It does not appear at this time that the defenses in this case raise a risk of judgments inconsistent with those previously issued in *Aldridge*. The motion to strike is denied. To the extent plaintiffs seek judgment on the pleadings, the motion is denied. Plaintiff may again challenge these defenses when the facts are fully developed by way of a motion for summary judgment.

**IT IS THEREFORE ORDERED** that Plaintiff DZ Bank's Motion to Strike Defendants' Affirmative Defenses 1–8 and 11–12 as Barred by the Doctrine of Claim Preclusion or, in the Alternative, for Partial Judgment on the Pleadings (Doc. 55) is denied.

Dated this <u>28th</u> day of June 2011, at Kansas City, Kansas.

                                              <u>**s/ Carlos Murguia**</u>
                                              **CARLOS MURGUIA**
                                              **United States District Judge**